UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SHARON R. WYNN,                                      CIVIL NO.  04-1357 (JMR/JSM)

     Plaintiff,

v.                                                                  REPORT AND RECOMMENDATION

JO ANNE B. BARNHART,
Commissioner of Social Security,

     Defendant.

     The above matter is before the undersigned United States Magistrate Judge on plaintiff's Motion for Summary Judgment [Docket No. 12] and defendant's Motion for Summary Judgment [Docket No. 15].  This matter has been referred to the undersigned Magistrate Judge for a Report and  Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

     For the reasons discussed below, it is recommended that the plaintiff's Motion for Summary Judgment be **DENIED** and that the defendant's Motion for Summary Judgment be **GRANTED**.

## I.     FACTUAL BACKGROUND

     Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416, 423, was initially filed on May 31, 2001.  Tr. 64-65A. Plaintiff claims she became disabled as of March 30, 2001, due to "internal bleeding. Low blood, dizziness, faint spells."  Tr. 65A, 95.

     The Social Security Administration ("SSA") denied plaintiff's application initially and upon reconsideration.  Tr. 33-36, 40-55.  Plaintiff filed a request for a hearing by an Administrative Law Judge.  Tr. 51.  Administrative Law Judge Harold B. Herseth ("ALJ")

dismissed plaintiff's claim after she failed to appear for her initial hearing.  Tr. 37-38.  On October 16, 2003, the Appeals Council vacated the ALJ's dismissal and remanded the case back for a hearing.  Tr. 38-39.  Plaintiff, who was represented by legal counsel, received a hearing before the ALJ on January 22, 2003.  Tr. 14, 369.  Testimony was taken at the hearing from plaintiff and her husband, Ken Yezek.  Tr. 14, 369.  In addition, evidence was presented by neutral vocational expert ("VE") Juletta Harren.  Id. On October 20, 2003, the ALJ issued a decision to deny plaintiff benefits.  Tr. 11, 14-27. Plaintiff filed a Request for Review of the ALJ's decision with the Appeals Council. Tr. 7-10.  The Appeals Council accepted additional evidence from plaintiff in the form of a December 30, 2003 letter from her asking that she be awarded benefits.  Tr. 10, 368. Ultimately, the Appeals Council denied plaintiff's request for review and upheld the ALJ's decision denying benefits to plaintiff, making the ALJ's findings the final decision of defendant.  Tr. 7-9.  See 42 U.S.C. § 405(g).

Plaintiff sought review of the ALJ's decision by filing the instant action with this Court pursuant to 42 U.S.C. § 405(g).  The matter is now before the Court on plaintiff's Motion for Summary Judgment [Docket No. 12] and defendant's Motion for Summary Judgment [Docket No. 15].

## II.   PROCESS FOR REVIEW

Congress prescribed the standards by which Social Security disability benefits may be awarded:  "[t]he Social Security program provides benefits to people who are aged, blind, or who suffer from a physical or mental disability."  42 U.S.C. § 1382(a); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992).   The Social Security Administration shall find a person disabled if the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment." 42 U.S.C. § 1382c(a)(3)(A).  The claimant's impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."   42 U.S.C. § 1382c(a)(3)(B).  The impairment must last for a continuous period of at least twelve months or be expected to result in death.   42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§ 404.1509, 416.909.

## A.    Administrative Law Judge Hearing's Five-Step Analysis

If a claimant's initial application for benefits is denied, he or she may request reconsideration of the decision.  20 C.F.R. §§ 404.909(a)(1), 416.1409(a).  A claimant who is dissatisfied with the reconsidered decision may obtain administrative review by an ALJ.  42 U.S.C. §§ 405(b)(1), 1383(c)(1); 20 C.F.R. §§ 404.929., 416.1429, 422.201 et seq.  To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis, requiring the ALJ to make a series of factual findings regarding the claimant's work history, impairment, residual functional capacity, past work, age, education, and work experience.  See 20 C.F.R. §§ 404.1520, 416.920; see also Locher, 968 F.2d at 727.  The Eighth Circuit described this five-step process in Morse v. Shalala, 16 F.3d 865, 871 (8th Cir. 1994), vacated on other grounds, as follows:

> The first step asks if the claimant is currently engaged in substantial gainful employment.  If so, the claimant is not disabled.  If not, the second step inquires if the claimant has an impairment or combination of impairments that significantly limits the ability to do basic work activities.  If not, the claimant is not disabled.  If so, the third step is whether the impairments meet or equal a listed impairment; if they do, the claimant is disabled.  The fourth step asks if the claimant's impairments prevent her from doing past relevant work.  If the claimant can perform past relevant

work, she is not disabled.  The fifth step involves the question of whether the claimant's impairments prevent her from doing other work.  If so, the claimant is disabled.

(citing 20 C.F.R. § 416.920).

### B.    Appeals Council Review

If a claimant is dissatisfied with the ALJ's decision, he or she may request review by the Appeals Council, though review is not automatic.  20 C.F.R. §§ 404.967-404.982, 416.1467-416.1482.  The decision of the Appeals Council, or of the ALJ if the request for review is denied, is final and binding upon a claimant unless the matter is appealed to Federal District Court within 60 days of notice of the Appeals Council's action. 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

### C.    Judicial Review

Judicial review of the ALJ's decision generally proceeds by considering the decision of the ALJ at each of the five steps.  The Court is required to review the administrative record as a whole and consider:

1.    The credibility findings made by the ALJ.

2.    The plaintiff's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.    Any corroboration by third parties of plaintiff's impairments.

6.    The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth plaintiff's impairments.

Cruse v. Bowen, 867 F.2d 1183, 1185 (8th Cir. 1989) (citing Brand v. Secretary of HEW, 623 F.2d 523, 527 (8th Cir. 1980)).

The review by this Court is limited to a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Johnson v. Apfel, 210 F.3d 870, 874 (8th Cir. 2000); Clark v. Chater, 75 F.3d 414, 416 (8th Cir. 1996); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992).  "We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."  Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938));  see also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994).  "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'"  Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000));  see also Cox v. Apfel, 160 F.3d 1203, 1206-07 (8th Cir. 1998) (same).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ.  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).  "It is not my job to decide the facts anew, reweigh the evidence, or substitute my judgment for that of the Commissioner.  In this regard, I 'must consider both evidence that supports and evidence that detracts from the Secretary's decision, but may not reverse merely because substantial evidence exists for the opposite decision.'"  Callison v. Callahan, 985 F. Supp. 1182, 1186 (D. Neb. 1997) (citations omitted).

The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence.  Culbertson, 30 F.3d at 939.   The Court should not reverse the Commissioner's finding merely because evidence  may exist to support the opposite conclusion.  INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1 (1992); Buckner, 213 F.3d at 1011; Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994).  Instead, the Court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory."  Gavin v. Apfel, 811 F.2d 1195, 1199 (8th Cir. 1987).

A claimant bears the burden of proving his or her entitlement to disability insurance benefits under the Social Security Act.  See 20 C.F.R. §§ 404.1512(a), 416.912(a); Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir. 1991).  Once a claimant has demonstrated that he or she cannot perform prior work due to a disability, the burden of proof shifts to the Commissioner to show that the claimant can engage in some other substantial, gainful activity.  Martonik v. Heckler, 773 F.2d 236, 238 (8th Cir. 1985).

## III.   DECISION UNDER REVIEW

### A.   Vocational Background

Plaintiff was 32 years old at the time of the ALJ's decision.  Tr. 11, 64.  She has completed her General Equivalency Diploma ("GED") and had one-year of college education.  Tr. 101.  Plaintiff has worked in the past as a dishwasher, housekeeper, mail sorting clerk, receptionist, and mail delivery clerk.  Tr. 104.  Plaintiff's last job involved mail delivery, which ended in June 2001.  Id. On August 18, 2001, plaintiff received notice that the United States Office of Personnel Management ("OPM") had approved her application for disability retirement benefits.  Tr. 139.  On September 26, 2002, OPM

notified plaintiff that it had determined that she was still disabled based on medical documentation she had submitted.  Tr. 138.

## B.   ALJ's Findings of Fact

The ALJ concluded that plaintiff was not entitled to disability insurance benefits under §§ 216(i) and 223 of the Social Security Act.  Tr. 27.  The ALJ based this decision on the following findings:

1. The claimant met the disability insured status requirements of the Act on March 30, 2001, the date claimant stated she became unable to work, and continues to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since March 30, 2001.

3. The medical evidence establishes that the claimant has severe fibromyalgia,[1] but that she does not have an impairment, or combination of impairments, which meets or equals an impairment listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's testimony concerning work-precluded pain, fatigue, depressive symptoms or similar feature is not supported by the record as a whole for the reasons detailed in the body of this decision.

5. The claimant has the residual capacity to perform work-related activities except for work involving lifting/carrying greater than 20 pounds occasionally or greater than 10 pounds frequently (20 CFR 404.1545).

6. The claimant's past relevant work as a receptionist did not require the performance of work-related activities precluded by the above limitation(s) (20 CFR 404.1565).

---

[1]   Fibromyalgia: "a chronic disorder characterized by widespread musculoskeletal pain, fatigue, and multiple tender points.  'Tender points' refers to tenderness that occurs in precise, localized areas, particularly in the neck, spine, shoulders, and hips. People with this syndrome may also experience sleep disturbances, morning stiffness, irritable bowel syndrome, anxiety, and other symptoms."  MILLER-KEANE MEDICAL DICTIONARY (2000).

7.      The claimant's impairment does not prevent the claimant from performing her past relevant work.

8.      The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR 404.1520(e)).

Tr. 26-27.

## C.      ALJ's Application of the Five-Step Process

The ALJ made the following determinations under the five-step procedure.  At the first step, the ALJ concluded that plaintiff had not engaged in any substantial gainful activity since the alleged onset of disability and, therefore, plaintiff's application for benefits could not be denied because of work experience.  Tr. 18.  At the second step, the ALJ found that plaintiff had impairments consisting of bilateral patellofemoral knee pain, history of peptic ulcer disease and/or gastrointestinal bleeding, fibromyalgia, Morton's Neuroma[2] of the right foot, and a history of taking medications for anxiety and depression.  Id.  However, the ALJ only found that plaintiff's fibromyalgia constituted a severe impairment.  Tr. 18-21.  At the third step, the ALJ determined that the record did not establish that plaintiff was subject to any impairment or combination of impairments that meet or equal the requirements of the Listing of Impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 21.  At the fourth step, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform work at light level of work, which included carrying no more than 20 pounds occasionally and no more than 10 pounds frequently.  Tr. 26.  Given this RFC, the ALJ determined that plaintiff was capable of performing her past relevant work as receptionist, as the position only required a

---

[2]      Morton's Neuroma: "Pain of severe, throbbing or stabbing character in the course or distribution of  . . . an interdigital nerve . . . ."  See STEADMAN'S MEDICAL DICTIONARY (2000).

sedentary level[3] of work and only required lifting/carrying of no more than 10 pounds

occasionally.[4]  Id.

## IV.    ISSUES UNDER REVIEW

In the present case, the ALJ determined that plaintiff maintained the following

RFC:

> The claimant has the residual capacity to perform work-related activities except for work involving lifting/carrying greater than 20 pounds occasionally or greater than 10 pounds frequently (20 CFR 404.1545).

Tr. 26.

Plaintiff disagrees with this RFC determination.  Plaintiff, who is pro se, has only

filed a two-page submission to this Court in support of her motion for summary

judgment.[5]  In her submission, plaintiff stated that she did not believe all of her "past

and current and ongoing medical condition [sic] was taken into consideration in the

decision."  See Plaintiff's Motion for Summary Judgment at p. 1.  In addition, plaintiff

---

[3]      20 CFR § 416.967(a) provides that sedentary work:

> [I]nvolves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

[4]      Since the ALJ denied plaintiff's application for benefits at the fourth step, the ALJ did not render a conclusion as to the fifth step – whether plaintiff has the RFC to perform a significant number of jobs existing in the national economy.  Ordonez v. Massanari, 2001 U.S. Dist. LEXIS 24634, *18 (N.D. Iowa 2001); see also e.g., Moad v. Massanari, 260 F.3d 887, 891 (8th Cir. 2001) (concluding that a claimant is not disabled if it is found that he or she can perform the functions of a past relevant job).

[5]      Plaintiff also attached with her motion for summary judgment a number of additional medical documents and letters from the OPM regarding her alleged disability.

asserted that she had been found disabled by the federal government as a postal employee.  Id.  The balance of her substantive submission to the Court stated as follows:

> I have the current medical conditions: chronic pain, severe fatigue, depression, palpable muscle spasms, numbness, osteoarthritis, carpal tunnel in both wrists, and findings of a syrinx[6] on my thoracic spine and also another one on my cervical spine.  In receiving all of my case, please take all of my medical conditions in to consideration.  I feel that the specialist that said there was some type of work out there that I could do, did not honestly take into account any of my disabling conditions.

Id. at p. 2.

## V.    PLAINTIFF'S RFC

A claimant's RFC is what he or she can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).  The ALJ must determine a claimant's RFC by considering the combination of the claimant's mental and physical impairments.  See Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  It is the claimant's burden, not the Commissioner's, to prove the RFC.  Id. at 1218 (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).  In determining a claimant's RFC, the ALJ must consider all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his or her limitations.  Id.

The ALJ "bears the primary responsibility for assessing a claimant's [RFC] based on all relevant evidence."  Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000). Nonetheless, a claimant's RFC is a medical question, and the RFC determination must be supported by "medical evidence that addresses claimant's 'ability to function in the

---

[6]     Syrinx: "A pathological tubular cavity in the brain or spinal cord." STEDMAN'S MEDICAL DICTIONARY (2000).

workplace.'" Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003) (quoting Nevland v. Apfel, 223 F.3d 853, 858 (8th Cir. 2000)). The ALJ is not limited to consideration of medical evidence, "but is required to consider at least some supporting evidence from a professional." Baldwin, 439 F.3d at 556 (citing 20 C.F.R. § 404.1545(c)). If necessary, the ALJ should solicit opinions from claimant's treating physicians, or seek consultative examinations to help assess claimant's RFC. Nevland, 204 F.3d at 858.

### A. RFC Determination by ALJ

The ALJ found that plaintiff has severe fibromylegia, but that the balance of plaintiff's other conditions--bilateral patellofemoral knee pain, history of peptic ulcer disease and/or gastrointestinal bleeding, fibromyalgia, depression, and Morton's Neuroma of the right foot -- were not severe. Plaintiff, on the other hand, contends that the ALJ did not take into account her medical conditions when making his decision to deny her disability benefits. Specifically, she asserts that she is entitled to disability benefits based on the following conditions: chronic pain, severe fatigue, depression, palpable muscle spasms, numbness, osteoarthritis, carpal tunnel, and findings of a syrinx.

This Court finds that the ALJ's findings as they relate to the medical conditions suffered by plaintiff are not contrary to the substantial medical evidence in the record. In addition, the Court finds that the substantial evidence of the record supports the ALJ's findings as it relates to the extent plaintiff's various medical conditions limited her RFC.

### 1. Evidence of Exertional Limitations

First, there is very little mention by plaintiff's medical doctors in the record of any limitations imposed on plaintiff. On May 3, 2001, plaintiff's general practitioner, Dr.

Roger Macy, wrote a letter stating that she should be off of work due to intestinal bleeding. Tr. 239.   On May 24, 2001, Dr. Macy found that plaintiff was feeling a little light-headed and week, but that most days she felt "fine". Tr. 237. Dr. Macy noted that her employer was nervous about having her back on the job driving, but Dr. Macy found that if her hemoglobin was normal "there shouldn't be a worry." Id. A subsequent June 8, 2001 note from Dr. Macy provided that plaintiff was getting ready to apply for disability and that she was feeling light-headed, weak, and exhausted.   Tr. 235. However, the blood work done on plaintiff was normal, including her hemoglobin levels. Id. Dr. Macy found that he could not pinpoint the cause of her alleged symptoms. Id. The substantial evidence in the record supports the finding that any impairments caused by plaintiff's intestinal bleeding did not last longer than 12-months.  In order for plaintiff to be entitled to benefits, the plaintiff's impairment must not only be so severe as to preclude her from working, but the impairment must last for a continuous period of at least twelve months or be expected to result in death. See 42 U.S.C. § 1382c(a)(3)(A); see also 20 C.F.R. §§ 404.1509, 416.909.

There was no mention in the record of any limitations put into place by plaintiff's medical doctors relating to her knee pain, back/neck pain, depression or fibromyalgia. The only mention of any limitations placed on plaintiff was from her chiropractor.  On June 13, 2001, Dr. Tom Holbrook wrote a letter to the United States Postal Services, Personnel Services, and while he did not find that plaintiff was disabled from working, he did impose the following limitation: "Ms. Wynn's limited to no prolonged standing or sitting, no lifting over forty pounds. Repetitive lower trunk bending, twisting, stooping should be avoided."   Tr. 195-96.   However, a chiropractor's opinion is "not 'an acceptable medical source' entitled to controlling weight.'" Hartranft v. Apfel, 181 F.3d

358, 361 (3rd Cir. 1999), (quoting 20 C.F.R. § 416.913); see also Cronkhite v. Sullivan, 935 F.2d 133, 134 (8th Cir. 1991) ("The ALJ properly gave little weight to the opinions of Cronkhite's chiropractors because such evidence is not considered an 'acceptable source' of medical information to prove disability; it may be used only to show how an impairment affects the claimant's ability to work.") (quoting 20 C.F.R. § 404.1513).  The ALJ noted the limitations placed by plaintiff's chiropractor, but noted that the clinical notes from August 2001 to April 2003 did not contain any mention of plaintiff's functional capacity.  Tr. 22.  While the clinical notes make reference to neck and back pain, there is no mention of any limitations that the chiropractor placed on plaintiff.  Tr. 175-77, 197-98, 360-362.  This Court notes that the ALJ provided that plaintiff had the capability to perform light work, which only allows for lifting involving a maximum of 20 pounds.[7]  Tr. 22.  On the other hand plaintiff's chiropractor found that plaintiff could lift up to forty pounds.  Tr. 196.  Plaintiff also submitted to the Court a progress report from her chiropractor dated July 20, 2004 to the OPM.  In the report, Dr. Holbrook did not provide any functional limitations regarding plaintiff, only that her status is unchanged since her disability began and that she is unable to work.  However, Dr. Holbrook provided in the

---

[7]      20 CFR § 416.967(b) states that light work involves:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

same progress report that plaintiff only had "minor aggravations of her condition" and had only "required minimal in office care to relive her symptoms."

In addition, the record shows that state agency medical doctors found that plaintiff had no exertional limitations.  Tr. 222-229.  Further, the record contradicts plaintiff's chiropractor's statement on June 13, 2001, that she could not sit or stand for prolonged periods of times given her ability to walk.  On May 24, 2001, plaintiff stated to her physical therapist that she had walked 4 1/2 hours on a trail.  Tr. 266.  Plaintiff reported to Dr. Macy on September 7, 2001 that she was walking on a daily basis.  Tr. 233.  Plaintiff also reported on December 3, 2001 that she had been walking 2 miles a day all summer long in 2001 and felt better; a October 23, 2002 medical note indicated that plaintiff stated she was walking on a regular basis; and a November 5, 2002 medical note stated that plaintiff was walking up to 45 minutes a day/5 days a week.  Tr. 278, 333, 337.

### 2.   Depression

Plaintiff contends that the ALJ erred in his assessment of her RFC by failing to give proper consideration to her depression.  The ALJ found that plaintiff's complaints of depression were not supported by the record as a whole.  Tr. 26.  The first mention in record of plaintiff suffering from depression is a December 15, 2000 entry by her physician Dr. Macy, which provided that plaintiff suffered from depression but that it was "under good control" with the Prozac she was taking.  Tr. 250.  On December 3, 2001, Dr. Macy again noted that plaintiff suffered from depression and that her symptoms increased when she decreased the amount of Prozac she was taking.  Tr. 278.  Dr. Macy did note that her depression was improving.  Id.  A March 14, 2002 medical note by Dr. Macy showed that her depression had been fairing better due in part to seeing a

church counselor.  Tr. 353.  A July 12, 2002, medical note by Dr. Macy indicated that plaintiff believed her mood was very good and that its was his opinion that plaintiff's depression was under good control using Prozac . . . ."  Tr. 340.  A December 16, 2002, medical note indicates that while plaintiff had a past medical history for depression, she was not on any medication to control this condition.  Tr. 314.  During the hearing, plaintiff testified that she was not under any medical treatment for her depression save for religious counseling, but was on Prozac and other anxiety medications.  Tr. 373, 382, 385-87.  None of the medical records submitted to this Court with plaintiff's motion for summary judgment make any mention of plaintiff suffering from depression let alone any disabling depression.

This Court finds that the ALJ's determination that plaintiff was not disabled based on depression is supported by substantial evidence in the record.  Although plaintiff was found to have been suffering from depression, her condition appeared to under control when she was on medications and would worsen when she cut back on them.  See East v. Apfel, No. 98-1970, 1999 WL 364316 at *1 (8th Cir. May 28, 1999) (conditions that can be treated with medication, including depression, are not disabling) (citing Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996)).  There no opinions from any of plaintiff's medical providers in the record that plaintiff's depression affected her ability to properly function in the workplace.  In addition, this Court notes that plaintiff never sought the assistance of a psychiatrist or psychologist related to her depression and the most recent medical records make no mention of the condition.  As, such, this Court finds that the ALJ properly took into account plaintiff's depression.

### 3.   Osteoarthritis

Plaintiff alleged that she suffered from disabling arthritis.  However, there is no mention in the medical record of plaintiff being diagnosed with the condition.  A May 2, 2001, orthopedic note provided that plaintiff was complaining of arthritic type pain in her right hand and pain in her knees.  Tr. 219.  X-rays taken of plaintiff's knees showed "no obvious arthritic changes."  Id.  There was no mention of any clinical findings regarding arthritis in plaintiff's right hand.  An August 14, 2001 chiropractic note indicates that plaintiff was told to talk with Dr. Macy about seeking a rheumotology consultation.  Tr. 217-218, 273. An April 9, 2002 note from a rheumatologist made no mention of plaintiff suffering from arthritis and the x-rays of her knees appeared to be unremarkable.  Tr. 324.  There are no other notes in the record that this Court can discern, including those documents submitted with plaintiff's motion for summary judgment, that indicate that plaintiff was suffering from or diagnosed with osteoarthritis.

### 4.   Syrinx on Plaintiff's Spine

The only mentions of a syrinx on plaintiff's thoracic and cervical spine was an August 4, 2004 letter from Dr. Macy to plaintiff (and the July 19, 2004 MRI results) indicating that a review of an MRI performed on July 19, 2004 showed a small syrinx in her thoracic region.  These documents were not a part of the record before the ALJ, but were submitted to this Court as a part of plaintiff's motion for summary judgment.  The ALJ's decision in this matter was rendered on October 20, 2003 and the appeals council denied review on January 28, 2004.  Tr. 7, 27.  This Court will not consider evidence of a worsened condition or of a new independent condition that arose after the ALJ's decision.  Adkins v. Barnhart, No. Civ.A. 2:02-0087, 2003 WL 21105103 at *3 (S.D. W.Va., May 05, 2003); Blackman v. Shalala, 837 F. Supp. 259, 263 (N.D. Ill. 1993)

16

(citing 20 C.F.R. § 416.1470(b)).[8]   Plaintiff may file a new social security disability application to the extent that she wishes to seek disability benefits based on the syrinxs located on her thoracic and cervical spine.

### 5.   Carpal Tunnel, Palpable Muscle Spasms and Numbness

Plaintiff claimed that she suffers from carpal tunnel in her wrists, palpable muscle spasms and numbness.[9]   In 1997, plaintiff was diagnosed with wrist tendonitis with questionable carpal tunnel-type symptoms.  Tr. 142.  By October 1997, she reported having some wrist pain but significant improvement with no numbness or tingling in the carpal tunnel area.  Tr. 146.  She was discharged from physical therapy in January of 1998.  Tr. 142.  It was noted that plaintiff felt good enough to go back to work and did not return for any follow-up physical therapy.  Id.  There are no other medical records before the ALJ and Appeals Council that provides any mention of carpal tunnel, numbness in the extremities, or muscle palpitations between March 31, 2001 (the onset of plaintiff's alleged disability) and October 20, 2003 (the date of the ALJ's decision). Dr. Macy did find that plaintiff complained about her neck but that she did not feel any weakness or numbness in her arms.  Tr. 340.  Further, according to state agency physicians, plaintiff had no functional limitations relating to using her hands.  Tr. 225. This Court understands that there have been findings in June-August of 2004 by medical providers that plaintiff had numbness in her hands and very mild carpal tunnel

---

[8]     This Court notes that an MRI taken of plaintiff's cervical spine made no mention of a syrinx.  Tr. 298-299.

[9]     Although plaintiff does not specify where the numbness and palpable muscle spasms are located, this Court assumes that she is referring to her hands based on the present record.

syndrome, but these findings occurred well after the ALJ's October 2003 decision and therefore, this Court will not consider them.

## B.      Disability Finding by the Department of Veterans Affairs

It is plaintiff's position that her disability is supported by the fact that she has been found disabled by the federal government as a postal employee.   The record shows that on August 18, 2001, plaintiff's application for disability retirement benefits had been approved by the United States Office of Personnel Management ("OPM").   Tr. 139.   On September 26, 2003 the OPM notified plaintiff that it was continuing her disability retirement benefits due to her current medical documentation.   Tr. 138.   The ALJ considered plaintiff's disability status in his ultimate decision not to award plaintiff social security disability benefits.   Tr. 15.

The OPM is the human resources agency for the federal government.   See www.opm.gov.  Social Security regulations provide in relevant part that:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 CFR § 404.1504

The disability determination by another agency is not binding on the Commissioner considering a Social Security applicant's claim for disability benefits. See Morrison v. Apfel, 146 F.3d 625, 628 (8th Cir. 1998) (citing Jenkins v. Chater, 76 F.3d 231, 233 (8th Cir. 1993)); see also Bernauer v. Chater, No. 3:94-cv-921RP, 1995 WL 803663 at *15 (N.D. Ind. Dec. 12, 1995) (finding that "OPM's finding of disability does not bind the SSA.") (citing 42 U.S.C. § 423(d); 20 C.F.R. § 404.1504).  Although a

another agency's determination is not binding on the Commissioner, it is entitled to some weight, although not great weight, and must be considered.  See Morrison v. Apfel, 146 F.3d 625, 628 (8th Cir. 1998) (citations omitted); see also Mack v. Chater, No. 96-320, 1997 WL 488944 at *2 (8th Cir. Aug. 25, 1997) (citing 20 C.F.R. § 404.1504; Jenkins v. Chater, 76 F.3d 231, 233 (8th Cir. 1996); Fisher v. Shalala, 41 F.3d 1261, 1262 (8th Cir. 1994)).

The only information before this Court is that the OPM concluded that plaintiff was disabled.   The Court has no information before it to evaluate the basis for the OPM's conclusion.   Thus, this Court gives the conclusory determination by the OPM that plaintiff was disabled as of April 15, 2003, little weight because it is contrary to the medical evidence in the record before this Court.  See generally, Lacewell v. Barnhart, No. 04-1856, 2005 WL 156643 at *2 (8th Cir. Jan. 26, 2005) (giving less weight to a VA determination not accompanied by extensive medical findings).   As such, this Court finds that OPM determination does not warrant a finding of disability.

Plaintiff also introduced a September 21, 2004 letter from the OPM, with her motion for summary judgment, that it still considered plaintiff to be disabled based on medical documentation submitted.  Again, plaintiff only submitted OPM's decision to the Court; she did not include any of the evidence considered by the OPM in making its determination.  It is the Court's duty to consider the new evidence and determine, in light of the newly introduced evidence, whether the ALJ's decision is supported by the substantial evidence in the record.  See Flynn v. Chater, 107 F.3d 617, 621-22 (8th Cir. 1997).  The 2004 OPM finding that plaintiff is disabled, like the previous findings, sheds no light as to why a disability finding was made and therefore, this Court finds that the 2004 OPM determination does not warrant a finding of disability or a remand to the ALJ.

19

In sum, this Court finds that the substantial evidence in the record as a whole supports the ALJ's finding that plaintiff's claimed impairments or a combination thereof, as listed above, were not so severe as to preclude her from working at her previous employment of receptionist.[10]   Consequently, this Court rejects plaintiff's contention that she is entitled to a finding of disability for the closed period of March 30, 2001 through October 3, 2003.

## VI.   PLAINTIFF'S SUBJECTIVE TESTIMONY

Failure to give some consideration to a claimant's subjective complaints is reversible error.   Brand v. Secretary of the Dept. of Health, Educ. and Welfare, 623 F.2d 523, 525 (8th Cir. 1980).  "[A] headache, back ache, or sprain may constitute a disabling impairment even though it may not be corroborated by an x-ray or some other objective finding."   Id.   An ALJ must consider a claimant's subjective complaints, regardless of whether they are corroborated by objective medical findings.  Id.; see also Cline v. Sullivan, 939 F.2d 560, 566 (8th Cir. 1991).   On the other hand, "we will not substitute our opinions for that of the ALJ, who is in a better position to assess a claimant's credibility."  Id. (citing Woolf, 3 F.3d at 1213).

In considering a claimant's subjective complaints of disability, the ALJ must assess the claimant's credibility, applying the factors set forth in Polaski v. Heckler,

---

[10]    While plaintiff challenged the RFC determined by the ALJ, she has not challenged the finding by the ALJ that her past position of employment as a receptionist comported with the RFC determination.  See Yeazel v. Apfel, 148 F.3d 910, 911-12 (8th Cir. 1998) (citing Roth v. G.D. Searle & Co., 27 F.3d 1303, 1307 (8th Cir. 1994)) (finding failure to raise an issue before this Court results in waiver of that argument).

739 F.2d 1320, 1322 (8th Cir. 1984) (vacated on other grounds by Bowen v. Polaski, 476 U.S. 1167 (1986)).  The Polaski factors require the ALJ to give full consideration to all the evidence presented relating to a claimant's subjective complaints, including prior work record, and observations of third parties and treating and examining physicians relating to such matters as:

  1.    the claimant's daily activities;

  2.    the duration, frequency, and intensity of the pain;

  3.    precipitating and aggravating factors;

  4.    dosage, effectiveness, and side effects of medication;  and

  5.    functional restrictions.

Id.; see also Cox v. Apfel, 160 F.3d 1203, 1207 (8th Cir. 1998) (same); Baumgarten v. Chater, 75 F.3d 366, 368 (8th Cir. 1996) (same); Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996) (same); Cline, 939 F.2d at 565 (same); Callison, 985 F. Supp. 1182, 1186 (D. Neb. 1997) (same).  "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." Cox, 160 F.3d at 1207.

"An ALJ may discount a claimant's subjective complaints of pain only if there are inconsistencies in the record as a whole." Johnson, 87 F.3d at 1017 (citing Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993)).  "The ALJ may discount a claimant's allegations of pain when he explicitly finds them inconsistent with daily activities, lack of treatment, demeanor, and objective medical evidence." Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996); see also Cox, 160 F.3d at 207.  The ALJ may not disregard a claimant's subjective complaints solely because he or she believes the objective

medical evidence does not support them.   Griffon v. Bowen, 856 F.2d 1150, 1154 (8th Cir. 1988).

If the ALJ rejects a claimant's complaint of pain, "the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony."   Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991).  "It is not enough that inconsistencies may be said to exist, the ALJ must set forth the inconsistencies in the evidence presented and discuss the factors set forth in Polaski when making credibility determinations." Cline, 939 F.2d at 565.

Here, plaintiff argued that the ALJ and the Appeals Council erred by failing to afford credibility to plaintiff's subjective complaints of pain, fatigue and depression. During the hearing before the ALJ, plaintiff complained that she suffered pain in her knees, back, shoulder blades and neck.  Tr. 379. Plaintiff also complained of being very fatigued and of depression.  Tr. 387, 379.

The ALJ found that plaintiff's allegations of impairment were not so severe as to limit her ability to engage in sustained work activity, as plaintiff's complaints were inconsistent with the medical evidence, her treatment, and her daily activities.  Tr. 24, 26.

This Court concludes that the ALJ's credibility determination is supported by substantial evidence in the record.  First, there is no objective medical evidence in the record that would support a finding that plaintiff is presently suffering from a level of pain or fatigue that would prevent her from sustaining employment.[11]  On March 31, 2001, plaintiff was admitted to St. Joseph's Medical Center based on complaints of feeling

---

[11]    This Court also finds that the medical evidence in the record does not support a finding that plaintiff is experiencing disabling depression based on the discussion set forth in Section V.A.2. of this Report and Recommendation, supra.

weak and dizzy, which was caused by gastrointestinal bleeding.   Tr. 169.   However, a May 4, 2001 medical note from St. Joseph's Medical Center found that "[o]n examination the patient appears to be in good general health."   Tr. 158.   On June 13, 2001, plaintiff's chiropractor wrote a letter to her employer stating that plaintiff had consistent low-grade back pain with frequent flare-ups of acute pain and knee pain.   Tr. 195.   The note also provided that plaintiff should not be exposed to prolonged sitting or standing and no lifting over 40 pounds.   Tr. 196.   The note stated that plaintiff was exercising regularly.   Id.   Records from plaintiff's chiropractor also indicated that she complained of back pain and pain between her shoulder blades between August 2001 to March 13, 2002.   Tr. 269-72.   An initial physical therapy evaluation performed on May 9, 2001 from St. Joseph's Medical Center provides that plaintiff was complaining of severe pain to her left knee.   Tr. 267.   An examination of plaintiff's extension and flexion range of her knee was normal, she had mobile patellas, normal knee strength, no pain when she resisted movements, her ligaments were normal, but that she experienced pain upon palpitation of the knee.   Id.

A June 8, 2001 note from Dr. Macy provided that plaintiff was getting ready to apply for disability and that she was feeling light-headed, weak, and exhausted.   Tr. 235.   However, the blood work done on plaintiff was normal, including her hemoglobin levels.   Id.   Dr. Macy found that he could not pinpoint the cause of her alleged symptoms.   Id.   He also noted that plaintiff "generally appears healthy."   Id.

On August 1, 2001, plaintiff was seen by an orthopedic doctor, Dr. Rud, regarding her knee and hand pain.   Tr. 218.   The doctor noted no obvious effusion[12] in

---

[12]   Effusion: "The escape of fluid from the blood vessels or lymphatics in the tissues or a cavity."   STEDMAN'S MEDICAL DICTIONARY (2000).

her knee and that the joints in her fingers seemed somewhat painful to the touch and swollen.  Id.  On August 14, 2001, Dr. Rud noted that plaintiff's knee did not show instability and there was no obvious effusion in the knee.  Tr. 217.  Dr. Rud diagnosed plaintiff with patellofemoral pain and likely fibromyalgia.  Id.

On September 7, 2001, Dr. Macy noted that plaintiff believed she had fibromyalgia due to tender points she was experiencing and a lack of sleep.  Tr. 232. Dr. Macy diagnosed plaintiff with fibromyalgia but noted that she was walking on a daily basis.  Id.  On November 16, 2001, plaintiff went to see Dr. Rud regarding pain in her left knee.  Tr. 262.  An injection was given but it did not improve the pain.  Tr. 261-62. The impression of Dr. Rud was that plaintiff was experiencing patellofemoral pain.  Tr. 262.  On November 20, 2001, Dr. Macy indicated plaintiff claimed her fibromyalgia was better, that the exercises for her knees were helping, and that she was starting to exercise.  Tr. 280.  Dr. Macy still noted tenderness consistent with fibromyalgia.  Id. Plaintiff was taking Vioxx[13] and Flexeril.[14]  Id.  On December 3, 2001, Dr. Macy noted that plaintiff's fibromyalgia was stable.  Tr. 278.

On November 5, 2001, plaintiff saw a rheumatology specialist.  Tr. 325.  She reported some pain in her hand and carpometacarpal joint of the thumbs that got worse with overuse.  Tr. 325.  Plaintiff stated that she has had shoulder, neck, knee and lower back pain.  Tr. 235.  Plaintiff also provided that she was not taking any pain medication. Tr. 326.  She was assessed with having more than 11 of the 18 tender points for fibromyalgia.  Id.  She was told to engage in aerobic exercise and quadricep exercises.

---

[13]    Vioxx is the brand name for a non-steroidal anti-inflammatory drug ("NSAID"), prescribed for the relief of arthritis and the management of acute pain in adults. Physician's Desk Reference 2108, 2110.

[14]    Flexeril: "Skeletal muscle relaxant."  THE PILL BOOK (2002).

Tr. 326-27.  Plaintiff also saw her rheumatologist on April 9, 2002, who reported that the x-rays and MRI of her knees were unremarkable but that she still had patellofemoral knee pain.  Tr. 324.  The doctor also reported that plaintiff was not following the exercises for her fibromyalgia.  Id.  The rheumatology specialist told plaintiff to come back if she was not doing well (Tr. 324), however, there is no record indicating that she did so.

On July 12, 2002, plaintiff complained of neck pain with some tingling.  Tr. 340. An MRI taken of her neck on July 18, 2002 only showed "very minimal loss of normal hydration signal'" similar to what had been seen in her 1999 MRI.  Tr. 299.  Further, the radiologist could "not identify disc bulge, protrusion, spinal stenosis or foraminal narrowing."  Id. An October 23, 2002 note provided that plaintiff was walking on a regular basis.  Tr. 337.  On November 25, 2002, plaintiff saw Dr. Macy who noted that plaintiff's fibromyalgia was stable and that her life stress was much improved.  Tr. 332. A July 20, 2004 letter from plaintiff's chiropractor to the OPM provides that plaintiff continues to have disabling pain and that her condition was unchanged since her disability began.  However, as stated previously, the letter also mentions that she had minor aggravation of her neck, back, and leg pain and that her condition "required minimal in office care to relieve the symptoms."

There is evidence in the record that plaintiff alleged she was experiencing pain, however, there is an absence in the record as to the severity of pain claimed by plaintiff. See Curran-Kicksey v. Barnhart, 315 F.3d 964, 968 (8th Cir. 2003) ("The lack of supporting evidence may be used as 'one factor to be considered in evaluating the credibility of testimony and complaints.'") (quoting Polaski, 739 F.2d at 1322).  Only plaintiff's chiropractor has opined that plaintiff is experiencing disabling pain.  As stated

previously, a chiropractor's opinion is not "an acceptable medical source" entitled to controlling weight. Hartranft, 181 F.3d at 361, (quoting 20 C.F.R. § 416.913); see also Cronkhite, 935 F.2d at 134. None of plaintiff's chiropractic notes suggest that plaintiff was at a level of pain warranting a finding that she is suffering from disabling pain. To the contrary, plaintiff's chiropractor's claims of disabling pain are contradicted by his assertion that plaintiff has had minor aggravation of her neck, back, and leg pain and that her condition "required minimal in office care to relieve the symptoms." Further, none of plaintiff's medical doctors have opined that plaintiff is restricted in any manner due to her pain. In fact, plaintiff's physicians have encouraged her to engage in aerobic exercise Tr. 326-27.

With regards to plaintiff's pain caused by her fibromyalgia, Dr. Macy has found her condition to be stable as of December 3, 2001. Tr. 278. In addition, plaintiff was not performing the exercises for her fibromyalgia as instructed by the rheumatology specialist. Tr. 324; see also Nelson v. Sullivan, 966 F.2d 363, 367 (8th Cir. 1992) (finding that the ALJ properly discounted claimant's subjective complaints of pain where claimant failed to follow doctor's instructions to lose weight in order to alleviate symptoms). Further, the rheumatology specialist told plaintiff to come back if she was not doing well after her April 9, 2002 visit, however, there is no record indicating that she did so.

Moreover, the record is inconsistent as to plaintiff's claims of disabling knee pain. Plaintiff sought assistance for her knee from a rheumatology specialist on November 15, 2001, who noted that plaintiff was not taking medication for pain at that time. Tr. 326. On November 20, 2001, Dr. Macy indicated plaintiff claimed her knees were benefiting from exercise. Tr. 280. The last time plaintiff visited an orthopedic doctor, Dr. Rud, was

on December 26, 2002 regarding her knee pain.  Tr. 261.  The impression of Dr. Rud was that plaintiff was experiencing patellofemoral pain.  Tr. 262.  On April 9, 2003, plaintiff again saw her rheumatology specialist for her knee pain.  Tr. 325. However, the x-rays for her knees were found to be unremarkable.  Tr. 324.  There is no other documentation that plaintiff sought medical attention for her knees in the record.  This inconsistent treatment by plaintiff of her knees supports the ALJ's finding of giving less credibility to plaintiff's complaints of knee pain.  See Singh v. Apfel, 222 F.3d 448, 453 (8th Cir. 2000) ("[A] claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications."); see also Curran-Kicksey, 315 F.3d at 969 (finding that evidence that a party did not regularly require prescription medication or therapy could "create reasonable doubt in a reasonable adjudicator's mind regarding to her testimony about the extent of her pain.") (citation omitted).

There is also an absence in the record of reports by plaintiff of fatigue.  Plaintiff's claims of fatigue appear to stem from period in which she lost blood on March 30, 2001. Tr. 169.  A May 24, 2001 note by Dr. Macy provided that plaintiff was feeling a little light-headed and week, but that most days she felt "fine".  Tr. 237.  A subsequent June 8, 2001 note from Dr. Macy provided that plaintiff was getting ready to apply for disability and that she was feeling light-headed, weak, and exhausted.  Tr. 235.  However, the blood work done on plaintiff was normal, including her hemoglobin levels.  Id.  Dr. Macy found that he could not pinpoint the cause of her alleged symptoms.  Id.  There are no other mentions in the medical record of complaints of fatigue by plaintiff until an August 13, 2004 doctor's consultation.   However, this well after the ALJ's decision was

rendered.   Further, to the extent that there is fatigue associated with plaintiff's fibromyalgia, it was found to be stable as of December 3, 2001.  Tr. 278.

In addition, the record shows that plaintiff was able to engage in a variety of activities throughout the period of time she claims to be disabled.  On May 24, 2001, plaintiff stated to her physical therapist that she had walked 4 1/2 hours on a trail.  Tr. 266.  Plaintiff also reported to Dr. Macy on September 7, 2001 that she was walking on a daily basis.  Tr. 233.  Plaintiff also reported that she had been waking 2 miles a day all summer long in 2001, a October 23, 2002 medical note indicated that plaintiff was walking on a regular basis, and a November 5, 2002 medical note provided that plaintiff was walking up to 45 minutes a day/5 days a week.  Tr. 278, 333, 337.  The record also indicated that plaintiff's parents, brother, sister, brother in-law were living with her and that she taking care of all of them.  Tr. 240, 282.  A March 4, 2002 chiropractor's note provided that plaintiff had driven from Brainerd to the Twin Cities and back.  Tr. 269.  In addition, plaintiff reported that she would drive daily, cooked twice a day, shop on a weekly basis, read the Bible daily, watch her children all day, go to church weekly, talk on the phone daily, and pay the pay the bills weekly.  Tr. 115.

Although plaintiff does not need to establish that she is bedridden to be disabled, a claimant's credibility regarding subjective complaints of pain, fatigue, and depression can be undermined by daily activities.  See Haley v. Massanari, 258 F. 3d 742, 748 (8th Cir. 2001) (finding inconsistencies between subjective complaints of pain and daily living patterns where claimant could care for personal needs, wash dishes, change sheets, vacuum, wash cars, shop, cook, pay bills, drive, attend church, watch television, listen to the radio, visit friends and relatives, read and work on the construction of his home); Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999) (finding that claimant's ability to

cook some meals, water the flowers around his house, help his wife paint, watch television, go out for dinner, occasionally drive an automobile, and occasionally visit with friends, did not support a finding of total disability); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (concluding that the credibility of claimant's allegations of disabling pain was undermined by his daily activities, including caring for children, driving, and occasional grocery shopping).  Here, plaintiff engaged in a wide array of activities during the time frame in which she alleged she was suffering from disabling pain, fatigue and depression rendering plaintiff's complaint that her condition precluded her from engaging in substantial gainful employment less than credible.  Thus, this Court concludes that the ALJ properly assessed plaintiff's RFC and her subjective testimony in light of the inconsistencies between the record and plaintiff's subjective complaints with regards to her claims of pain, fatigue and depression.

## RECOMMENDATION

For the reasons set forth above, this Court finds that the decision by the ALJ to deny plaintiff disability benefits is supported by substantial evidence on the record as a whole.

THEREFORE, IT IS RECOMMENDED THAT:

1.    Plaintiff's Motion for Summary Judgment [Docket No. 12] be **DENIED**; and

2.    Defendant's Motion for Summary Judgment [Docket No. 15] be **GRANTED**.

Dated:      August 2, 2005

_s/ Janie S. Mayeron_
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **August 19, 2005** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.